IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| NORTH AMERICAN ROOFING<br>SERVICES, INC. | § <br> § <br> § | |
| VS. | § <br> § | CIVIL ACTION NO. G-08-038 |
| NATIONAL TRUST INSURANCE<br>COMPANY, ET AL. | § <br> § <br> § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On February 10, 2010, this case was tried before this Court, without a jury.  The Court, having considered the evidence and arguments of counsel, now issues the following Findings of Fact and Conclusions of Law.

1.    The Court has diversity jurisdiction over this cause pursuant to 28 U.S.C. § 1332.  Venue is properly maintained in the Galveston Division of the Southern District of Texas because it is the District where a substantial part of the events or omissions giving rise to this action occurred.  28 U.S.C. § 1391(2)(a)     The Parties are before this Court by consent under 28 U.S.C. § 636(c)(1).

2.    Plaintiff, North American Roofing Services, Inc. (North American), is a corporation organized and existing under the laws of the State of North Carolina with its principle place of business in North Carolina.

3.    Defendant FCCI Insurance Group is an insurer licensed under the laws of the state of Georgia and organized under the laws of Florida.

4.    Pursuant to a contract with Rockwell Construction Corporation of Texas (Rockwell), North American was to install the roofs on several Home Depot stores, one of which was to be built at 6128 Broadway in Galveston, Texas.

5.    In connection with its Rockwell contract, North American entered into a contract agreement (Contract No. 02-184), with East Coast Systems, Inc. (East Coast), effective September 27, 2002.   Under the contract, East Coast, acting as North American's subcontractor, was to perform all the labor necessary to install the roof on the Galveston Home Depot store within eight days after notice to proceed with the work was given by North American.

6.    Contract No. 02-184 required East Coast to, *inter alia*, provide and maintain at its own expense, a commercial general liability policy and to assure that North American was named as an additional insured under the policy.  Under the terms of the "INSURANCE" paragraph of the contract, East Coast was to indemnify and hold North American harmless from any property damage arising out of East Coast's work, except those due solely to North American's negligent acts; however, except for being included in this paragraph, the contract does not specifically state that insurance is required to fund any required indemnification.   The contract also contained a separate "INDEMNIFICATION" paragraph which was, likewise, silent as to any supportive insurance requirements.

7.    Contract No. 02-184 provided, and East Coast agreed, that East Coast would remedy, without cost to North American, the occurrence of any post-completion defect due to East Coast's faulty workmanship for a period of two years from the date of completion of East Coast's work and the acceptance of the work by North American; however, the contract

2

did not require, nor did North American request, East Coast to provide and maintain "completed operations coverage," which is the standard insurance coverage available for such a hazard.

8.    Yates Insurance Agency is an independent insurance agency in Atlanta, Georgia, owned, in part, by Alan Yates.  Yates Insurance Agency began writing commercial general liability insurance coverage for East Coast in 1997.  In 2001, Yates Insurance Agency entered into an agency agreement with Defendant FCCI Insurance Group (FCCI) which allowed it to solicit business for FCCI's consideration and to bind coverage if FCCI agreed to insure the risk and the potential insured agreed with FCCI's insurance proposal.  Under the agency agreement, Yates Insurance Agency was expressly an "Independent Contractor" and it, therefore, had no authority to endorse (amend) FCCI's policies.  According to FCCI's regional vice-President, Yates Insurance Agency was also authorized by FCCI to insure certificates of insurance when required by Yates Insurance Agency's commercial clients, like East Coast, subject to required disclaimers.

9.    In 2001, Yates Insurance Agency placed East Coast's commercial insurance with FCCI. FCCI then issued a Commercial General Liability policy in the standard form utilized in the construction industry since 1986.

10.    At the time East Coast entered into Contract No. 02-184 with North American, it was the named insured under the commercial general liability policy issued by FCCI, with an effective term of September 16, 2002, through September 16, 2003.  The policy obligated FCCI to pay for property damage caused by an insured "to which this insurance applies" and to defend an insured against suit seeking those damages; however, it further provided

3

that FCCI had no duty to defend an insured against any suit for property damage to which the insurance did not apply.

11.     Under the policy, "Your work" was defined, in relevant part, as "work or operations performed by you" and included "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'."

12.     In the "products-completed operations hazard" definition of the policy, which addressed "'property damage'…arising out of…'Your work' except…work that has not yet been completed," the policy provided that "Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed."

13.     The policy had a Contractor Liability Advantage endorsement which amended "SECTION II-WHO IS AN INSURED" by adding provision 2.e.  Provision 2.e states that an insured under the policy includes

> Any person or organization for whom you are performing opera-
> tions when you and such person or organization have agreed in
> writing in a contract or agreement that such person or organization
> be added as an additional insured on your policy.  Such person or
> organization is an additional insured only with respect to liability
> arising out of your ongoing operations performed for that insured.
> A person's or organization's status as an insured under this
> endorsement ends when your operations for that insured are
> complete.

14.     If North American had wanted insurance coverage for liability for damages to East Coast's work arising out of incidents occurring after operations had been completed, it could have required East Coast to purchase it, but Contract No. 02-184 contained no such require-ment.  Cf. Hargis v. Maryland American Gen. Ins. Co., 567 S.W.2d 923, 926 (Tex. Civ.

App. - - Eastland 1978), see also, <u>Cole v. American Industries and Resources Corporation</u>, 715 N.E.2d 1179, 128 Ohio App. 3d 546, 552 (1998)

15.   Pursuant to the Contractor Liability Advantage endorsement, North American became an additional insured under the policy on September 27, 2002, when Contract No. 02-184 became effective.

16.   After receipt of the actual policy from FCCI Alan Yates of Yates Insurance Agency reviewed the policy to determine whether it provided the coverage required by Contract No. 02-184 and determined, as best he could, that it did; he may have also made that representation to East Coast when he hand-delivered the policy to East Coast.

17.   On October 16, 2002, Yates Insurance Agency, at East Coast's request, issued and sent to North American a certificate of insurance for the Home Depot job in Galveston, Texas, as evidence that North American was, in fact, an additional insured on the FCCI policy. The certificate of insurance, however, expressly provided that it "does not constitute a contract between" FCCI, Yates Insurance Agency and North American, "nor does it affirmatively  or negatively amend, extend or alter the coverage afforded by the policies listed thereon" and further cautioned that "THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES." A copy of the certificate of insurance was not sent by Yates Insurance Agency to FCCI and FCCI did nothing to manifest acceptance of the certification of insurance as altering coverage in accordance with North American's beliefs or Yates Insurance Agency's misrepresentations, if any.

18.   East Coast's work at the Home Depot store in Galveston, Texas, under Contract No. 02-184 was completed in January or February 2003 and North American, pursuant to the Contractor Liability Advantage endorsement, would have then ceased to be an additional insured under the terms of that endorsement.

19.   On September 16, 2003, FCCI renewed East Coast's policy for another year, effective September 16, 2003 through September 16, 2004; none of the provisions discussed herein were altered in the renewed policy.

20.   On June 25, 2004, within two years from the date of its completion, the roof of the Home Depot store in Galveston, Texas, collapsed, possibly due, in whole or in part, to the faulty workmanship of East Coast.

21.   The collapse of the roof of the Home Depot store in Galveston, Texas, occurred after the 2002 - 2003 policy in effect at the time East Coast completed its work, had expired.

22.   On June 23, 2006, almost two years following the collapse of the roof, Home Depot brought suit in state court against, *inter alios*, Rockwell for, *inter alia*, the property damage caused by the roof's collapse.  Thereafter, in late November 2006, Rockwell joined North American as a Third-Party Defendant to that action.   On January 31, 2007, North American acting through counsel, demanded that East Coast and FCCI defend it in the Home Depot suit pursuant to Contract No. 02-184.  The demand was subsequently made known to FCCI.  After a few months of haggling, FCCI finally denied North American's tender of its defense.

23.   On February 11, 2008, North American filed the instant lawsuit.  Through circumstances not relevant here, the suit is presently one by North American against FCCI Insruance

Group for breach of contract based on its failure to provide a defense to North American, as an additional insured under the policy, in the state court litigation or, in the alternative, for the misrepresentations of its agent, Yates Insurance Agency, that the policy issued by FCCI provided coverage for the roof after its completion as required by the two year warranty provision of Contract No. 02-184.

24.   During the pendency of this action, North American settled its interest in the state court proceeding.   It, therefore, seeks to recover from FCCI the settlement amount of $386,200.00, its attorneys' fees and expenses in the state court action in the amount of $407,669.39, its attorneys' fees and expenses in this suit in the amount of $127,058.00, the 18% statutory penalty available under the Texas Insurance Code for failure to timely pay North American's state court defense costs, pre-judgment interest, and costs.

25.   Notwithstanding any defense, indemnification or warranty  obligations East Coast may have had to North American as a result of the collapse of the roof at the Home Depot store in Galveston, Texas, the relevant language of the Contractor Liability Advantage endorsement is not ambiguous; therefore, North American ceased to be insured under the policy when East Coast completed its work in January or February 2003.

26.   Since North American was no longer insured when the collapse of the roof of the Home Depot store in Galveston, Texas, occurred, FCCI had no duty to defend North American in the state court case and it, therefore, did not breach its contract of insurance.

27.   Regardless of any representations by Yates Insurance Agency concerning the coverage offered by FCCI's policy, Yates Insurance Agency was not an agent of FCCI with authority to alter the coverage afforded by the policy itself and it would have been

7

unreasonable for North American to rely on such representations without examining the policy itself as cautioned by the language of the certificate of insurance.

28.     FCCI is not bound by, or liable for, any misrepresentations Yates Insurance Agency may have made about the coverage actually provided in the policy itself.

29.     North American's claims against FCCI are without merit and must be dismissed.

30.     FCCI is entitled to recover its taxable costs from North American under 28 U.S.C. §1920.

**DONE** at Galveston, Texas, this _____25th_____ day of February, 2010.

_____
John R. Froeschner
United States Magistrate Judge